Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 540 | **DATE** | 3/28/2002 |
| **CASE TITLE** | Usinor Industeel vs. Leeco Steel Products | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at_____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Usinor's motion for replevin is denied. Usinor's motion to avoid the sales agreement between Usinor and Leeco under the CISG is denied. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 28 2002 | |
| | Notified counsel by telephone. | date docketed | 23 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| USINOR INDUSTEEL, a foreign corporation ) ) ) ) Plaintiff, ) ) ) -vs.- ) ) LEECO STEEL PRODUCTS, INC., an ) Illinois corporation ) ) ) Defendant. ) ) | No. 02 C 0540<br><br>Senior Judge George W. Lindberg |

**DOCKETED MAR 2 8 2002**

## MEMORANDUM OPINION AND ORDER

Before the Court is Usinor Industeel's ("Usinor") Motion for Replevin. Usinor seeks to exercise its replevin right under 735 ILCS 5/19-101 *et seq.* to recover possession of the eighteen unpaid shipments of Creusabro 8000 steel (the "Steel Shipments"), valued in excess of one million dollars, that Usinor sold and delivered to Leeco Steel Products, Inc. ("Leeco"). If Usinor is unable to replevin the steel, it seeks its right to avoid the contract under the Convention on Contracts for the International Sale of Goods (the "CISG"). For the reasons described below, the Court denies Usinor's motion for replevin and its motion to avoid the contract under the CISG.

**I.  Background**

**A. Facts**

On January 25, the Court entered a restraining order without prejudice as to any of the parties' legal positions. On February 20, the Court granted LaSalle National Bank's

("LaSalle") unopposed right to intervene, and granted injunctive relief preserving the Steel Shipments until the Court could rule on Usinor's replevin motion.

Usinor is a corporation incorporated under the laws of France with its principal place of business in France. Usinor and its parents and sister companies constitute a global leader in steel production, and produce, process and distribute stainless and flat carbon steels serving customers in the automotive, mining, construction, packaging and household appliance industries. One of Usinor's specialty steels is a brand of steel plate, Creusabro 8000, which is an advanced homogeneous, lightweight, anti-abrasive steel plate for applications involving extreme wear and tear.

Leeco is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois. Leeco has operations in Chicago, St. Louis, Pittsburgh, Wisconsin, South Carolina and Tennessee. Leeco is an independent steel center, specializing, securing, processing and delivering sheet and plate grades of steel.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this dispute is between a citizen of a foreign state and a citizen of the United States and the amount in controversy exceeds $75,000.

In early February 2000, Leeco began placing orders with Usinor for the purchase and shipment of certain tonnage of Creusabro 8000. Leeco ordered the steel in order to participate in a proposed new project of Caterpillar relating to large mining vehicles. Leeco intended to sell the steel it had ordered from Usinor to either Caterpillar or Caterpillar suppliers. Caterpillar and its supplier facilities are located in, among other places, Wyoming, Mexico and Peru. Caterpillar and its suppliers intended to fabricate the

steel into ultra light truck beds for use at mining facilities throughout the world.

Under Paragraph 7 of the sales agreement between Usinor and Leeco for the Steel Shipments (the "Agreement") Usinor "remain[s] the owner of the goods up to the complete and total payment of all sums due." Also, pursuant to the terms of the Agreement, Leeco was obligated to pay Usinor within 60 days following receipt of the steel. In addition, Leeco agreed that any dispute regarding the Steel Shipments would be resolved in the French court system.

Usinor states that Leeco's early enthusiasm for the Caterpillar project resulted in extraordinary demands on Usinor to deliver substantial quantities of Creusabro 8000 steel plate. Therefore, beginning in December 2000 and continuing until April 20 2001, Usinor produced and exported multiple shipments of the steel, valued at $1,188,817.30, from France to Leeco's designated locations in accordance with Leeco's delivery schedule.

At some time in the year 2000, Caterpillar notified its own suppliers, as well as Leeco and Usinor, that it was halting or considering halting, the fabrication of truck beds in the mining vehicle program. Leeco now has possession of Creusabro 8000 steel that Leeco was unable to sell to Caterpillar, although Usinor asserts it has many alternate uses. Leeco took delivery of the Steel Shipments, and Usinor asserts on information and belief, has used portions of the Steel Shipments in its operations and/or sold portions to others. Leeco has made a partial payment on the total value of only one of the Steel Shipments for the portions that it has used in its operations or sold to others. Leeco has not made a complete and total payment for the Steel Shipments, and has not returned the Steel

Shipments, after demand by Usinor to do so. Currently, Leeco still owes Usinor at least $988,817.36 of the total value of the Steel Shipments. Usinor asserts on information and belief that the value of the remaining steel from the Steel Shipment in the possession of Leeco is worth substantially less than the amount of money that Leeco owes Usinor. Instead of making complete and total payment for the Steel Shipments, Usinor asserts that Leeco has instead sought to use its control over the improved steel to force Usinor to provide Leeco a refund on the steel it had purchased, but not used.

Leeco purchased the Steel Shipment using a line of credit (the "Loan") from LaSalle Bank. Usinor asserts that Leeco is in default on the Loan and has been urged by LaSalle Bank to sell the Steel Shipments to pay off any remaining debt owed by Leeco to that lender under the Loan. Usinor asserts on information and belief that Leeco may be facing insolvency through its default on the Loan and would not be able to pay any damages that Usinor might recover from Leeco for breach of the sales agreement.

### B. Parties' positions

Usinor argues that the CISG preempts state law, specifically, the UCC, and that LaSalle's rights to the Steel Shipments stemming from Article 2 are preempted by CISG. Looking at Article 4(b) of the CISG, Usinor argues that the State Department position is that the CISG would not preempt law governing property interests in the Steel Shipments arising prior to Usinor's sale of the steel to Leeco. Usinor argues that LaSalle had no interest in the Steel before it was sold, and that LaSalle's interest entirely arises out of the existence of the sales contract between Leeco and Usinor, and that contract is governed by CISG. Therefore, Usinor argues, LaSalle's rights are also governed by the CISG.

Leeco argues that the UCC, not the CISG, governs the transaction, and that replevin is not a cause of action allowed to the seller under the UCC, only reclamation within 10 days, and that those 10 days have passed. Leeco asserts that Usinor has only a reservation of a security interest, per Section 2-401(a) of the UCC. Leeco states that Usinor never perfected a purchase money security interest in the steel sold to Leeco, and that therefore, its rights are subordinate to those of LaSalle, which has a perfected security interest. Leeco argues that the CISG does not govern because "it has no application to disputes concerning the goods themselves which are sold in international trade, but governs instead only the obligations of buyers and sellers." Leeco argues that since this case involves the rights of two secured parties, LaSalle as a perfected secured creditor and Usinor as an unperfected secured creditor, Article 9 of the UCC governs the relative rights of LaSalle and Usinor in the steel. Leeco states that Usinor has no right to replevin because, since it lacks a perfected security interest in the steel, it has no title or right to immediate possession of the steel, and moreover, the UCC does not list replevin as a remedy available to a seller.

Similarly, LaSalle argues that given that there is no evidence that Usinor perfected its security interest in the steel, LaSalle's demonstrated prior security interest remains superior. LaSalle argues that since Usinor has not demonstrated a probability of ultimately prevailing on the underlying claim of possession, it therefore is not entitled to relief under the Illinois Replevin Act.

The conflict that the Court must face in its determination is one between maintaining the purpose of the CISG and the purpose of the UCC. As Usinor correctly

argues, Article 7 of the CISG states "[i]n the interpretation of this Convention, regard is to be had to its international character and to the need to promote uniformity in its application and the observance of good faith in international trade." Usinor argues that applying Article 2 of the UCC would increase the burden on parties to examine local sales law, which would not promote the purposes of the CISG. Application of the UCC, on the other hand, requires parties to bear the burden of inspecting the local law of wherever the goods involved in the contract might be shipped.

However, the effectiveness of the UCC also depends on courts' uniformity of application, of the ability of parties to be able to rely on the dependency of filed financing statements on record with the Secretary of State's Office.

**II. Analysis**

To recover under replevin, Usinor must have the right to possession, or title, in the Steel Shipments. The issue of first impression facing the Court is whether the CISG applies to a transaction between a buyer and seller when a third party has an interest in the goods. The Court needs to determine whether or not when a third party is involved, if local law, the UCC, preempts the interest given to the seller by the CISG.

**A. The CISG governs the transaction between buyer and seller**

The CISG was ratified by the United States on December 11, 1986, and became effective on January 1, 1988. See 15 U.S.C.A. App. at 332 (1998). The CISG was adopted for the purpose of establishing "substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and the seller." U.S. Ratification of 1980 United Nations Convention on Contracts for the

6

International Sale of Goods: Official English Text, 15 U.S.C.A. App. at 52 (1997). The CISG applies "to contracts of sale of goods between parties whose places of business are in different States...when the States are Contracting States." 15 U.S.C.A. App. Art 1(a). Here the buyer and seller are parties who place of business are France and the U.S., both signatories to the CISG.

U.S. federal caselaw interpreting and applying the CISG is scant. See Claudia v. Olivieri Footwear Ltd.,1998 WL 164824 (S.D.N.Y.) *4. As one court put it, "[d]espite the CISG's broad scope, surprisingly few cases have applied the Convention in the United States." See MCC Marble Ceramic Center, Inc. v. Ceramica Nuova d'Agostino, S.p.A., 144 F. 3d 1384, 1389 (11th Cir. 1998). While there are few cases in the U.S. dealing with the CISG, it is clear that the CISG governs the transaction between Usinor and Leeco such that if LaSalle were not a party to this controversy, the resolution would be clear: under the Supremacy Clause of the United States Constitution, the Convention, would displace any contrary state sales law such as the UCC. See Sunil R. Harjani, The Convention on Contracts for the International Sale of Goods in United States Courts, 23 Hou. J. of Int'l L. 49, 53 (2000).

**B. The CISG pre-empts the UCC when there is only a seller and buyer**

Many commentators have written that when the CISG applies, it pre-empts domestic sales law that otherwise would govern the contract, such as Article 2 of the UCC. See, e.g., Richard E. Speidel, The Revision of UCC Article 2, Sales in Light of the United Nations Convention on Contracts for the International Sale of Goods, 16 N.W.. J. Int'l L. & Bus. 165, 166 (1995) (stating that "[i]n the United States, [the CISG] is a self-executing

7

treaty with the preemptive force of federal law."). See also Michael A. Tessitore, The U.N. Convention on International Sales and the Seller's Ineffective Right of Reclamation Under the U.S. Bankruptcy Code, 35 Willamette L. Rev. 367 (1999). At the time of contracting, the parties have the opportunity to opt-out, and decide that the UCC, or other domestic law, applies. Here, the parties did not opt out of the CISG in the Agreement.

While even the issue of whether the CISG preempts the UCC in determining which law applies to a contract between seller and buyer is one of first impression in this district, the Northern District of California recently concluded that "the CISG preempts state laws that address the formation of a contract of sale and the rights and obligations of the seller and buyer arising from such a contract." Asante Technologies, Inc. v. PMC-Sierra, Inc., 164 F. Supp. 2d 1142 (N.D. Cal. 2001). Moreover, the CISG is a treaty, and thus federal law, and under the Supremacy Clause, it preempts any inconsistent provisions of state law. Illinois is bound by the Supremacy Clause to the treaties of the United States. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land.") Thus, under general Illinois law, the CISG is applicable to contracts where the contracting parties are from different countries that have adopted the CISG.

However, the text of the CISG and analysis by commentators suggest that the CISG applies only to buyer and seller, not to third parties. Therefore, application of the CISG here requires a court to resolve an issue for first impression. To wit, the court must determine whether the CISG governs a controversy if a third party has a security interest

in the goods.

### i. Article 4 of the CISG

The key provision of the CISG which is at issue here is Article 4, which states that the CISG:

> "governs only the formation of the contract of sale and the rights and obligations of the seller and the buyer arising from such a contract. In particular, except as otherwise expressly provided in this Convention, it is not concerned with: (a) the validity of the contract or of any of its provisions or of any usage; (b) the effect which the contract may have on the property in the goods sold."

Leeco's argument is that section (b) of Article 4 excludes the application of the CISG to the case at hand. Usinor's position is that Article 4(b) means that those property interests placed outside CISG's scope are property interests arising prior to sale, and that here, LaSalle does not have property interests in the Steel Shipments prior to the sale.

The State Department states of Article 4(b) that "[w]hether the sale to the buyer cuts off outstanding property interests of third persons is not dealt with by the Convention. This specific provision illustrates the general rule of Article 4 that the Convention is concerned only with the 'rights and obligations of the seller and the buyer' arising from the sales contract." Usinor asserts that the State Department is referring only to property interests that exist at the time of sale. However, other commentators support a different reading, simply that the CISG does not govern the rights of third persons who are not parties to the contract. See Richard Speidel, The Revision of UCC Article 2, Sales in Light of the United Nations Convention on Contracts for the International Sale of Goods, 16 Nw. J. Int'l L. & Bus. 165, 173 (1995), "[u]nless 'otherwise expressly

9

provided,' CISG is not concerned with the 'effect which the contract may have on the property in the goods sold' or the rights of third persons who are not parties to the contract. In essence, CISG is limited to two-party commercial contracts for sale and assumes that all sellers and buyers have relatively equal bargaining capacity." See also Caroline Delisle Klepper, The Convention for the International Sale of Goods: A Practical Guide for the State of Maryland and its Trade Community, 15 Md. J. Int'l L. & Trade 235, 239 (1991) ("the Convention will not govern issues of contract validity or property title to goods sold. As a result, a transaction between a United States seller and a foreign buyer which falls within one of these exceptions will, if the choice of law rules so direct, be governed by the U.C.C.")

Similarly, John Honnold writes in Uniform Law for International Sales § 444 (3d ed. 1999) that "[t]he seller's right under the Convention to recover the goods is subject to practical limitations. This remedy is of special importance when the buyer is insolvent; in this setting the rights of creditors are likely to intervene by levy of execution or by the designation of a receiver or trustee in bankruptcy. The Convention will not override the rights of creditors, purchasers and other third persons granted by domestic law; under Article 4, the Convention "governs only . . .the rights. . .of the seller and the buyer. . ."

As Honnold goes on to state, "One question remains: Does applicable domestic law invalidate (art. 44(a)) a contractual provision allowing reclamation of the goods on non-payment? Such a rule of invalidity is conceivable but seems unlikely. (He cites to UCC 9-503 and UCC 1-201(37)). However, as we have seen, the Convention's rules are limited (art. 4) to the rights 'of the seller and the buyer' and yield to the rights of third

10

persons such as creditors and purchasers." See id. at 444.1.

The "conceivable" but "unlikely" that Honnold notes is what occurred in the transaction at hand. The remedy of avoidance under the CISG is not available to Usinor if LaSalle has a right to the Steel Shipments under domestic law. The remedy of replevin is not available if Usinor does not have title to the Steel Shipments under domestic law. Therefore, the question the Court next needs to determine is whether domestic law grants LaSalle such a right, a right to the Steel Shipments that supersedes that of Usinor's. Looking to domestic law to determine the effect of Usinor's retention of title clause in light of a third party claim is also consistent with the Australian court case, Roder Zelt-un Hollenkonstruktieonen GmbH v. Rosedown Park Party Ltd., (No. S6 3076 of 1993; FED No. 1049/95; BC 9501975) (Federal Court, South Australian District, April 28, 1995) in which the court held that it needed to look to domestic law to determine the validity of the retention of title provision. While this case is far in distance from the present jurisdiction, commentators on the CISG have noted that courts should consider the decisions issued by foreign courts on the CISG.

**ii. Domestic Law**

First, the Court needs to determine which domestic law applies, that of France or Illinois. Under French law, the seller of goods has an absolute right to contract for title until payment, and therefore the retention of title clause in the Agreement would be determinative. However, under the UCC, Usinor would only have a reservation of a security interest.

11

Under the "most significant contacts rule" of the Restatement (Second) which Usinor asks the Court to apply, and the UCC choice of law provision which Leeco argues should be the governing test, the Court finds the same result: Illinois law applies. The "most significant contacts rule" states there are five relevant factors to consider: 1) place of contracting; 2) place of negotiating; 3) place of performance; 4) location of subject matter of the contract; 5) domicile, residence, place of incorporation and business of the parties. See e.g. Central States, Southeast and Southwest Areas Pension Fund, et al. v. Tank Transport, Inc., 1991 WL 191342 at *2. Comment e to Section 188 of the Restatement (Second) on Conflicts states that the place of negotiation is of little importance when the parties do not meet but conduct negotiations via mail or telephone (and in this case facsimile). Comment e also states that when the contract deals with a specific physical thing, the location of the thing is significant: "The state where the thing or the risk is located will have a natural interest in transactions affecting it. . . Indeed, when the thing or the risk is the principal subject of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract." Here, the goods are located in Illinois. Therefore, the most significant contacts are in Illinois.

Application of the UCC choice of law provision leads to the same result. Section 1-105 of the UCC states "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing an agreement this

Act applies to transactions bearing an appropriate relation to this state." To define the meaning of "appropriate relation", commentary 3 to this Section states, "Where a transaction has significant contacts with a state which has enacted the Act and also with other jurisdictions, the question what relation is 'appropriate' is left to judicial decision. In deciding that question, the court is not strictly bound by precedents established in other contexts." In Gordon v. Clifford Metal Sales Co. Inc., 602 A. 2d 535 (1992), the trial court held that the law of the state of the situs of the steel at the time of insolvency of the debtor is controlling. Here, the steel is located in Illinois, and so the transaction has the most appropriate relation to Illinois.

Therefore, the Court finds that the UCC governs the determination of whether LaSalle has title in the Steel Shipments, or, to phrase it in a different way, application of the UCC determines the validity of the retention of title provision in the contract.

**C. Applying the UCC**

**i. Usinor's title in the Steel Shipments**

Under UCC Section 2-401(a), Usinor has a reservation of a security interest only. Title retention contracts are construed as creating only security interests under the U.C.C. (See UCC Section 2-401(a),"Any retention or reservation by the seller of the title in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.") Therefore, under domestic law, Usinor's

13

retention of title in the contract did not effectively retain title in Usinor. Rather, transfer of title was effected upon delivery to Leeco. See UCC § 2-401(2) ("[U]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest. . .")[1]

### ii. Perfection of Usinor's interest

A seller who retains a security interest by reservation of title under section 2-401(1) must file a financing statement if the interest is to continue to be perfected. See J. White and R. Summers, Uniform Commercial Code, §30-11. Usinor never filed a financing statement, so it never perfected its security interest.

### iii. LaSalle's security interest

Once title passed to Leeco, Leeco possessed sufficient "rights in the collateral" to give LaSalle a security interest under U.C.C. § 9-203. This security interest was not

---

[1] Usinor states that it would not be able to conduct an evaluation of determining the applicable law to security interests in the hundreds of jurisdictions to which it ships and sells steel because the cost would be unreasonable. However, the Court notes that Usinor missed its chance to reclaim the Steel Shipments under the law in several ways, and that their cost is not prohibitive. First, Usinor waited until LaSalle had a chance to file the continuing financing statement and perfect its security interest in the Steel Shipments before filing the Complaint. Second, Usinor also missed its chance to seek reclamation of the goods under the UCC § 2-702, which allows the seller 10 days from the buyer's receipt of the goods to reclaim the goods if the seller discovers the buyer is insolvent. (The Court notes that the parties have not provided the Court with enough information to determine if UCC§ 2-702(2) applies, (and do not even brief this issue): "if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery the 10 day limitation does not apply." Leeco in its Response states that it is a "good faith purchaser," per UCC§ 2-702(3), in which case UCC §2-702(2) does not apply; however, the issue is not clear-cut: see the Seventh Circuit decision in In re Reliable Drug Stores, Inc., 70 F. 3d 948, 949 (7th Cir. 1995)("'Several courts have held, or assumed, that a security interest beats a reclamation claim, on the ground that the security interest equates to the rights of a good faith purchaser under UCC §§ 1-201(32) and (33). . . Legal scholars are not so sure. . .'") Third, Usinor never filed a financing statement, which would have given it a perfected security interest with priority in the Steel.

perfected, however, until the filing of the second financing statement on November 15, 2001.

Through the Credit Agreement and Security Agreement ("Credit Agreement") entered into on February 4, 1997 by and between LaSalle and Leeco, LaSalle extended secured loans to Leeco. The financing statement dated February 11, 1997 (the "First Financing Statement") shows that LaSalle holds a security interest in Leeco's collateral which it defines as:

> "[a]ll inventory in all of its forms, including, but not limited to, (i) all goods held for sale or lease or to be furnished under contracts of service or so leased or furnished, (ii) all raw materials, work in process, finished goods, supplies and materials used or consumed in the processing, packing, shipping, advertising, selling, leasing, furnishing or production of such inventory or otherwise used or consumed in the Company's business, (iii) goods in which [Leeco] has an interest in mass or a joint or other interest or right of any kind, whether in the possession of the Company or of a bailee or other Person for sale, storage, transit, processing, use or otherwise, and (iv) goods which are returned to or repossessed or shipped in transit by the Company and all additions and accessions thereto and replacements thereof."

The Steel Shipments are "goods held for sale or lease" under (i) but were not yet held by Leeco at that time, (and they were not "to be furnished under contracts of service"). The Credit Agreement and the First Financing Statement do not have a clause providing for a security interest in after-acquired property. The financing statement dated November 15, 2001 continued the effectiveness of the First Financing Statement, thereby including within the definition of inventory the Steel Shipments that were at that time in the possession of Leeco.

At the date of the sale of the Steel Shipments to Leeco, LaSalle did not have a perfected security interest in the Steel Shipments; its perfected interest arose only on November 15, 2001, after the sale of the Steel Shipments, once it was in the possession of Leeco, and LaSalle filed the continuing financing statement. Usinor's Complaint was filed on January 23, 2002, after LaSalle's security interest was perfected.

### iv. Result under the UCC

Usinor does not have title in the Steel Shipments, only a reservation of a security interest. Therefore, the remedy of replevin is unavailable to Usinor. See Hannaman v. Davis, 20 Ill. App. 2d 111, 115 (2d Dist. 1959) ("'Replevin' is a possessory action and the plaintiff must recover, if at all, on the strength of his own title or his right to immediate possession.)

Usinor has a security interest in the Steel Shipments, but it is not perfected. A perfected security interest prevails over the retained interest of an unpaid seller who did not perfect a security interest. Therefore, LaSalle's perfected security interest prevails over the retained interest of Usinor in the Steel.

ORDERED: Usinor's motion for replevin is denied. Usinor's motion to avoid the sales agreement between Usinor and Leeco under the CISG is denied.

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: MAR 2 7 2002